UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOHN PLEAU, | : |
| Plaintiff, | : |
| v. | : No. 06cv1626(DJS) |
| CENTRIX, INC., | : |
| Defendant. | : |

## RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff John Pleau ("Mr. Pleau") brought this action against his employer, Centrix Inc. ("Centrix"), alleging violations of Title VII of the Civil Rights Act, codified at 42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60(a) et seq. Specifically, Mr. Pleau alleges that Centrix discriminated against him based upon his gender, age, and marital status. Pending before the court is "Defendant's Motion to Dismiss." **(Dkt. # 18.)** Centrix seeks dismissal of Mr. Pleau's Title VII gender discrimination claim (the First Cause of Action), his CFEPA gender discrimination claim (the Fourth Cause of Action), and his CFEPA marital status claim (the Third Cause of Action). For the reasons set forth herein, Defendant's Motion to Dismiss **(dkt. # 18)** is **GRANTED in part and DENIED in part.**

## I. FACTS

The facts are drawn from Mr. Pleau's Complaint and are accepted as true for the purposes of ruling on the pending motion to dismiss. On or about July 22, 2002, Mr. Pleau began working for Centrix as a temporary machine operator. Centrix made his position a permanent one on or about December 2, 2002. Then, on or about April 1, 2004, Mr. Pleau was promoted to the post

of Second Shift Group Leader.  Mr. Pleau's wife, Jackie ("Mrs. Pleau"), was also employed by the company.  She held the post of Operations Manager.

On or about January 3, 2005, Centrix discharged both Mr. Pleau and his wife.[1]  The only reason articulated by Centrix for terminating Mr. Pleau's employment was "professional differences."  (Dkt. # 1, Pl. Comp. ¶ 37).  Mr. Pleau states that he did not have any professional differences with Centrix and that the termination of Mrs. Pleau was not relevant to his ability to perform the duties of his position.  Indeed, Mr. Pleau asserts that Centrix's articulated reason is pretext for age, gender, and marital status discrimination.  Thus, he alleges that his age, gender, and marital status were motivating factors in Centrix's decision to terminate him.

Prior to his termination, Mr. Pleau had consistently performed his job duties in an exemplary manner.  At the time of his termination, he was fully qualified and capable of performing the duties of the second shift group leader and/or machine operator position.  In addition, he had never been disciplined.  Mr. Pleau was a loyal and dedicated employee unaffected and independent of his marital status with Mrs. Pleau.

According to Mr. Pleau, Centrix terminated his employment based on its discriminatory presumptions and stereotypes regarding the reaction it believed that he, as a husband, would harbor toward Centrix after learning of its decision to terminate the employment of Mrs. Pleau.  He claims that his termination was based upon Centrix's stereotype of a man's reaction to the termination of his wife, whereby Centrix concluded that Mr. Pleau would not be able to effectively perform his job duties solely because it had terminated his wife.  He further alleges

---

[1] The alleged reasons advanced by Centrix for terminating Mrs. Pleau were unrelated to Mr. Pleau's employment with Centrix.

that Centrix acted on an oversimplified impression that it held of men and how men would react to an adverse employment action involving their wives, who happened to be employed by the same employer. Mr. Pleau points to an internal document, wherein Centrix listed as a reason for discharging him the following statement: "due to John's [Mr. Pleau] personal relationship with Jackie [Mrs. Pleau] and her termination from Centrix as an Operations Manager, I feel John [Mr. Pleau] cannot perform his duties as second shift team leader effectively." (Id. ¶ 38).

On or about June 24, 2005, Mr. Pleau filed a charge with the State of Connecticut Commission on Human Rights and Opportunities (the "CHRO"), alleging that Centrix terminated his employment due to his age and his marital status. Thereafter, on or about August 17, 2005, Mr. Pleau filed a federal age discrimination claim with the U.S. Equal Employment Opportunity Commission (the "EEOC"). By letter dated September 5, 2006, the EEOC issued to Mr. Pleau a "Notice of Right to Sue." (See dkt. # 1, Pl. Compl., Ex. 1.) The CHRO issued to Mr. Pleau a "Release of Jurisdiction" on or about September 7, 2006. (See id., Ex. 2.)

On or about October 16, 2006, Mr. Pleau filed the instant lawsuit. He attached both the EEOC's Notice of Right to Sue" and the CHRO's "Release of Jurisdiction" to his complaint. (See id., Exs. 1, 2.)

## II. DISCUSSION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), Centrix moves to dismiss the First, Third, and Fourth Causes of Action of the Complaint dated October 16, 2006.

A. Standard

When considering a 12(b)(6) motion to dismiss, the a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). Dismissal is warranted only if, under any set of facts that the plaintiff can prove consistent with the allegations, it is clear that no relief can be granted. See Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Desiano v. Warner-Lambert Co., 326 F.3d 339, 347 (2d Cir. 2003) (internal quotation marks omitted). In its review of a motion to dismiss, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

B. Exhaustion of Mr. Pleau's Title VII and CFEPA Gender Discrimination Claims

Centrix argues that Mr. Pleau did not exhaust his Title VII and CFEPA gender discrimination claims. Mr. Pleau counters that "[a]lthough not labeling the gender discrimination to which he [Mr. Pleau] was subjected [to] as gender discrimination in his administrative complaints, the plaintiff unmistakably details the gender stereotyping which form the basis of his cause of action centered on gender discrimination." (Dkt. # 21.) The court shall separately analyze whether Mr. Pleau exhausted his Title VII and CFEPA claims.

1. Mr. Pleau's Administrative Complaints

Centrix argues that Mr. Pleau's federal and state gender discrimination claims (the First and Fourth Causes of Action) must be dismissed because he failed to file a gender discrimination charge with both the CHRO and the EEOC. Mr. Pleau's complaint, however, alleges that "a charge of employment discrimination on the basis of age and gender was filed on or about June 29, 2005, with both the State of Connecticut Commission on Human Rights and Opportunities and the United States Equal Opportunity Commission, which filings were within 180 days of the commission of the unlawful employment practices . . . ." (Dkt. # 1, Pl. Compl. ¶ 9a.) Despite this language, Centrix argues that Mr. Pleau did not file a state or federal charge of gender discrimination with the respective administrative agency. In support of this assertion, Centrix has submitted to the court copy of both Mr. Pleau's CHRO Complaint and his EEOC Complaint. As a preliminary matter, the court must determine whether it can look to the CHRO Complaint and the EEOC Complaint while deciding the instant motion to dismiss.

The Second Circuit has observed that when "considering a motion to dismiss . . . a district court must limit itself to the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference . . . [and review all allegations] in the light must favorable to the non-moving party." Newman & Schwartz v. Asplundh Tree Expert Co., Inc., 102 F.3d 660, 662 (2d Cir. 1996). Here, the court finds that Mr. Pleau's Complaint incorporates the CHRO and EEOC Complaints by reference because it explicitly states that Mr. Pleau filed a gender discrimination charge with the requisite state and federal agencies. Moreover, Mr. Pleau annexed a copy of both the EEOC's "Notice of Right to Sue" and the CHRO's "Release of Jurisdiction" to his complaint. (See dkt. # 1, Pl. Compl., Exs.

1, 2.) Thus, the court finds that Mr. Pleau's Complaint incorporates his CHRO and EEOC charges by reference. As such, the court may look to Mr. Pleau's CHRO and EEOC complaints while deciding the instant motion to dismiss.

## 2. Title VII Gender Discrimination Claim

A review of Mr. Pleau's EEOC complaint reveals that he only alleged that he was discriminated against because of his age. Moreover, Mr. Pleau in his opposition papers, concedes that he did not file a gender discrimination claim with the EEOC. (See dkt. # 21.) Rather, he claims that his gender discrimination claim is "reasonably related" to his age discrimination claim. (See id.)

"Title VII requires that an employment discrimination claimant pursue administrative procedures before commencing a lawsuit and imposes a deadline for the initiation of such procedures." Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001). Under Title VII, a private sector employee claimant may bring suit in federal court only if he has first filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and obtained a right-to-sue letter. Legani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir. 2001). The Second Circuit has held "that presentation of a Title VII claim to the EEOC 'is not a jurisdictional [prerequisite], but only a precondition to bringing a Title VII action . . . .'" Francis v. City of New York, 235 F.3d 763, 768-69 (2d Cir. 2000) (alteration in original) (citing Pietras v. Bd. of Fire Commissioners, 180 F. 3d 468, 474 (2d Cir. 1999)).

A district court may hear only claims that are included in an EEOC charge or are based on conduct subsequent to the EEOC charge which is "reasonably related" to those alleged in the EEOC charge. Butts v. City of New York Dep't of Hous., 990 F.2d 1397, 1401 (2d Cir. 1993).

As the Second Circuit has observed, the exhaustion requirement is designed to give the EEOC sufficient opportunity to investigate claims, encourage their resolution, and take remedial measures. Butts, 990 F. 2d at 1401-1402. A claim is "reasonably related" to conduct alleged in an EEOC charge if it meets one of three tests. Butts, 990 F.2d at 1402. First, a claim is "reasonably related" if the alleged conduct would fall within the scope of any EEOC investigation which would reasonably be expected to arise from the EEOC charge. Id. This "loose pleading" concept recognizes that EEOC charges are often filed by employees without the benefit of counsel. Id. Second, a claim is "reasonably related" if it alleges retaliation against the employee for the filing of an EEOC charge. Id. In this type of case, the exhaustion requirement is "relaxed" because of the close connection between the retaliatory act and the filing of the EEOC charge. Id. Third, a claim is "reasonably related" if it alleges further incidents of discrimination which are "carried out in precisely the same manner alleged in the EEOC charge." Id. at 1402-03. In such cases, the purposes behind the exhaustion requirement are satisfied because the EEOC has had the opportunity to investigate the means of discrimination as carried out in the prior incidents. Id. at 1403.

Mr. Pleau argues that the first and third Butts exceptions apply to the case at hand. With respect to the first Butts exception, Mr. Pleau argues that his claim of being discharged owing to his gender would have fallen within the scope of the EEOC's investigation into his claim that he was terminated because of his age. The court disagrees. "[A] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Fitzgerald, 251 F.3d at 359-60 (internal quotation marks omitted). In this inquiry, "the focus should be 'on the factual

7

allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving.'" Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003) (quoting Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 637 (9th Cir. 2002)). The central question is whether the complaint filed with the EEOC gave that agency "adequate notice to investigate discrimination on both bases." Id. at 202.

Here, Mr. Pleau did not give the EEOC adequate notice to investigate discrimination on both bases. See Drummer v. DCI Contracting Corp., 772 F. Supp. 821, 827 (S.D.N.Y. 1991) (for the EEOC reasonably to be expected to investigate a charge, it must somehow have been alerted to the claim). Indeed, he alleged that Centrix's decision to terminate him was motivated by age discrimination. He did not allege that Centrix's decision to terminate him was motivated by marital status discrimination or gender discrimination. Moreover, courts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are not reasonably related. See, e.g., Gronowicz v. Coll. of Staten Island, 359 F. Supp. 2d 243, 249 (N.D.N.Y. 2005) ("plaintiff's administrative complaint alleging discrimination based on age could not reasonably be expected to have triggered an investigation into the allegations of national origin discrimination under Title VII."); Culbertson v. Charosa Found. Corp., No. 03-CV-3742 (SJF) LB, 2004 WL 2370686, at *4 (E.D.N.Y. Oct. 18, 2004) (finding that "plaintiff's administrative complaint alleging discrimination based on gender could not reasonably be expected to have triggered an investigation into the allegations of age, racial, and religious discrimination she now raises."); Murray v. Brooklyn Public Library, No. 96-2786, 1997 WL 1048899, at *3 (E.D.N.Y. June 13, 1997) (dismissing a gender discrimination charge where

8

administrative complaint had only alleged discrimination on the basis of race and age); Mitchell v. Fab Indus., Inc., No. 96-0095, 1996 WL 417522, at *3 (S.D.N.Y. July 25, 1996) ("claims of discrimination based upon race and national origin are not reasonably related to the original claims of religious and sexual discrimination under the loose pleading allowance described in Butts."). Thus, Mr. Pleau's argument that his gender discrimination claim is reasonably related to his age discrimination claim fails because "[w]here, as here, the gravamen of an EEOC investigation lies in specific categories of discrimination, a plaintiff attempting to sue on additional grounds must have initially alleged facts sufficient to trigger an EEOC investigation on those grounds." Mitchell, 1996 WL 417522, at *4. As Mr. Pleau's EEOC charge only alleged discrimination on the basis of age, his administrative complaint could not reasonably have been expected to have triggered an investigation of gender discrimination.

Mr. Pleau further argues that the third Butts exception applies here. Under the third Butts exception a claim is "reasonably related" if it alleges further incidents of discrimination which are "carried out in precisely the same manner alleged in the EEOC charge." Butts, 990 F. 2d at 1402-03. Here, however, Mr. Pleau is not alleging that a further incident of discrimination occurred. Rather, Mr. Pleau's gender discrimination claim arises from the same incident of discrimination that his age discrimination claim arises from-his termination from Centrix. Thus, Mr. Pleau's gender discrimination claim is not saved by this exception to the exhaustion requirement. See Townsend v. Exch. Ins. Co., 196 F. Supp. 2d 300, 313 (W.D.N.Y. 2002) (observing that, with respect to the third Butts exception, "a 'reasonably related' claim applies only to alleged discriminatory conduct that occurred after the EEOC charge is filed."). As such, Mr. Pleau's gender discrimination claim cannot be raised in the instant lawsuit because it was

9

never presented in his charge of discrimination with the EEOC.

Because Mr. Pleau's claim of gender discrimination is not "reasonably related" to his claim of age discrimination, the court finds that Mr. Pleau has failed to exhaust his administrative remedies with respect to his Title VII gender discrimination claim. To the extent Centrix moves to dismiss Mr. Pleau's Title VII Gender Discrimination Claim (the First Cause of Action), its motion is **GRANTED**.

### 3. CFEPA Gender Discrimination Claim

A review of Mr. Pleau's CHRO Complaint reveals that he only alleged that Centrix discriminated against him on the basis of his age and marital status. Indeed, Mr. Pleau did not check the box which indicated that he was discriminated against because of his sex. Centrix argues that the court lacks subject matter jurisdiction over Mr. Pleau's CFEPA discrimination claim (the Fourth Cause of Action)[2] because he has failed to exhaust his administrative remedies as required by Conn. Gen. Stat. § 46a-100. Centrix also contends that Mr. Pleau's failure to obtain a release from the CHRO, pursuant to § 46a-101, deprives the court of subject matter jurisdiction over his CFEPA gender discrimination claim. The court agrees.

The CFEPA contains specific statutory requirements for filing complaints of discriminatory employment practices. "The provisions of the CFEPA that prohibit discriminatory employment practices; General Statutes §§ 46a-58 through 46a-81; must be read in conjunction with the act's provisions for the filing of complaints concerning alleged

---

[2]The court observes that Mr. Pleau's Fourth Cause of Action alleges a violation of "Connecticut Fair Employment Act Barring Gender and Age Discrimination." (See dkt. # 1, Pl. Compl.) Centrix does not argue that Mr. Pleau failed to exhaust his administrative remedies with respect to his CFEPA age discrimination claim.

discriminatory practices with the CHRO. General Statutes §§ 46a-82 through 46a-96." Sullivan v. Bd. of Police Commissioners, 196 Conn. 208, 215 (1985). A plaintiff, who fails "to follow the administrative route that the legislature has prescribed for his claim of discrimination, lacks the statutory authority to pursue that claim . . . ." Id. at 217.

Pursuant to Conn. Gen. Stat. § 46a-82(a), any person "claiming to be aggrieved by an alleged discriminatory practice" may file a complaint with the CHRO. Conn. Gen. Stat. § 46a-82(a). Following the final order of the CHRO or dismissal of the complaint by the CHRO, a complainant may appeal to the Superior Court. See Conn. Gen. Stat. § 46a-94(a).

The complainant may also file an original action with the Superior Court pursuant to Conn. Gen. Stat. §§ 46a-100 and 46a-101. Section 46a-100 provides, in pertinent part, that

> [a]ny person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with Section 46a-82 and who has obtained a release from the commission in accordance with Section 46a-83a or 46a-101, may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred . . . .

Conn. Gen. Stat. § 46a-100. Section 46a-101(a) further provides that "[n]o action may be brought in accordance with Section 46a-100 unless the complainant has received a release from the commission . . . ." Conn. Gen. Stat. § 46a-101; see Brightly v. Abbott Terrance Health Ctr., Inc., No. CV980148584S, 2001 WL 256228, at * 3 (Conn. Super. Ct. Feb. 27, 2001) (holding that "the court finds that §§ 46a-100 and 46a-101(a) are mandatory and require the plaintiff to obtain a release from the CHRO prior to initiating a private cause of action under the CFEPA."); White v. Martin, 23 F. Supp. 2d 203, 206 (D. Conn. 1998) (holding "that this Court lacks subject matter jurisdiction over plaintiff's CFEPA discrimination claims due to the plaintiff's failure to obtain a release in accordance with the clear language of C.G.S.A. § 46a-101. . . .");

11

Catalano v. Bedford Associates, Inc., 9 F. Supp. 2d 133, 136 (D. Conn. 1998) (holding "this court lacks subject matter jurisdiction over plaintiff's CFEPA discrimination claim for his failure to procure a release from the CHRO."). Here, Mr. Pleau opted to first file an administrative complaint with the CHRO alleging age discrimination and marital status discrimination. Mr. Pleau did not, however, file a gender discrimination complaint with the CHRO. Thus, he did not receive a "Release of Jurisdiction" from the CHRO to sue Centrix for gender discrimination. Because Mr. Pleau did not receive a "Release of Jurisdiction," as required by Conn. Gen. Stat. § § 46a-100 and 46a-101, the court lacks subject matter jurisdiction over his CFEPA gender discrimination. Thus, to the extent Centrix moves to dismiss the Fourth Cause of Action, its motion is **GRANTED in part**. To the extent Centrix moves to dismiss Mr. Pleau's CFEPA Gender Discrimination (the Fourth Cause of Action), its motion is **GRANTED**. To the extent Centrix moves to dismiss Mr. Pleau's CFEPA age discrimination claim (which also listed as the Fourth Cause of Action), its motion is **DENIED**.

C. CFEPA Marital Status Discrimination Claim

Centrix argues that Mr. Pleau's Third Cause of Action, which purports to state a claim of marital status discrimination, should be dismissed. Specifically, Centrix argues that Mr. Pleau's marital status discrimination claim fails to state a claim upon which relief can be granted because it is premised upon the fact that he is married to a particular person and not upon his status of being a married man. Mr. Pleau counters this his CFEPA marital status claim is rooted in the preconceived notion that a married individual would not be able to perform effectively if his wife, an employee of the same company, is fired. Mr. Pleau's argument fails however, because the court finds that his marital status claim is premised upon the identity of his spouse; i.e., it

turns upon the fact that his wife was a Centrix employee, rather than his status as a married man. The court shall explain.

Connecticut, by statute, prohibits discrimination against an employee due to his or her marital status. Section 46a-60 of the Connecticut General Statutes provides,

> (a) It shall be a discriminatory practice in violation of this section: (1) For an employer . . . to discharge from employment any individual . . . because of the individual's . . . marital status . . . .

Conn. Gen. Stat. § 46a-60. Thus, "[b]y its plain terms, the initial language in § 46a-60(a)(1) prohibits an employer from refusing to hire or employ, or to bar or discharge from employment "any individual" because of, *inter alia,* the individual's marital status." McWeeny v. City of Hartford, No. HHBCV054007575S, 2006 WL 3691695, at *5 (Conn. Super. Ct. Nov. 27, 2006). Connecticut courts have held that § 46a-60 prohibits discriminatory actions taken against employee when they are based upon that employee's status of being married. See Blackwell v. Danbury Hosp., No. 321561. 1996 WL 409370, at *3 (Conn. Super. Ct. June 26, 1996) (finding that "the definition of "marital status" [with respect to Conn. Gen. Stat. § 46a-60] can only be the condition of being single, married, separated, divorced or widowed. The marital status of a married individual is "married," and the identity of the individual's spouse does not affect that status." ); Bombard v. Indus. Riggers, Inc., No. CV 970140181, 1998 WL 13935, at *6 (Conn. Super. Ct. Jan. 5, 1998) ("This court agrees . . . that the definition of "marital status" does not concern the identification of a particular person."); Stewart v. Cendant Mobility Services Corp., No. CV000337994S, 2002 WL 442385, at *7 (Conn. Super. Ct. Feb. 21, 2002) ("Here, assuming all facts most favorably to the plaintiff, Elizabeth M. Stewart, she was not discharged because of her status as a married woman, but because her husband was engaged in business activities which

13

directly competed with Cendant Mobility. It was not the fact that she was married that caused her discharge, but the occupation of the individual to whom she was married."). In the case presently before the court, Mr. Pleau alleges that Centrix terminated his employment because he was married to a particular person, Mrs. Pleau, who also happened to be an employee that Centrix was going to terminate. Although Mr. Pleau, in his complaint, alleges that Centrix terminated his employment based on its discriminatory presumptions and stereotypes regarding the reaction it believed that Mr. Pleau, as a husband, would harbor toward it in view of its termination of the employment of Mrs. Pleau, his claim is premised upon his relationship to one particular Centrix employee, his wife. Indeed, he alleges Centrix, in an internal document, listed as a reason for discharging Pleau the fact that "due to John's [Mr. Pleau] personal relationship with Jackie [Mrs. Pleau] and her termination from Centrix as an Operations Manager, I feel John [Mr. Pleau] cannot perform his duties as second shift team leader effectively." (Dkt. # 1, Pl. Compl. ¶ 38).

Although Mr. Pleau attempts to save his marital status claim by arguing that it is "[b]ased on its stereotype of a man's reaction to the termination of his wife" and that "[t]he defendant typecast the plaintiff based on the prejudices it held the status of marriage," he also alleges that Centrix "wrongfully conclud[ed][,] without any evidence[,] that the plaintiff would not be able to perform his job duties solely because the defendant terminated the employment of the plaintiff's wife." He further alleges, "[t]he defendant was motivated by the unlawful stereotypes it held of the plaintiffs' inability to perform his job duties simply because of his status as a man whose wife was terminated by his and his wife's employer." Thus, Mr. Pleau is alleging that Centrix decided to terminate his employment because of his connection to a particular person, Mrs. Pleau.

Moreover, Mr. Pleau's case is analogous to the recent Connecticut Supreme Court case of McNamara v. Tournament Players Club of Connecticut, Inc., 270 Con. 179, 198 (2004). In McNamara, the plaintiff, Susan McNamara, argued that her application to a club had been denied solely because she was married to her husband, Brian McNamara. The Connecticut Supreme Court dismissed plaintiff's CFEPA marital status claim because "It [wa]s clear . . . that the denial of her application was based on her status as Brian P. McNamara's spouse . . . ." and not just her status as married woman. Id. at 198. Here, like in McNamara, the plaintiff is complaining that he suffered an adverse employment action because he was married to a particular person. The court finds that, as a matter of Connecticut law, Mr. Pleau has not sufficiently pleaded a claim upon which relief can be granted. Accordingly, Centrix's motion to dismiss Mr. Pleau's CFEPA marital status claim is **GRANTED**.

### III.  CONCLUSION

For the foregoing reasons Centrix's motion to dismiss **(dkt. # 18)** is **GRANTED in part and DENIED in part**. To the extent that Centrix moves to dismiss Mr. Pleau's Title VII gender discrimination claim (the First Cause of Action), its motion is GRANTED. To the extent that Centrix moves to dismiss the entire Fourth Cause of Action, its motion is GRANTED in part and DENIED in part. Centrix's motion to dismiss Mr. Pleau's CFEPA gender discrimination claim is GRANTED. Centrix's motion to dismiss Mr. Pleau's CFEPA age discrimination claim is DENIED. Lastly, to the extent Centrix moves to dismiss Mr. Pleau's CFEPA marital status

15

claim, its motion is GRANTED.

**IT IS SO ORDERED.**

Dated at Hartford, Connecticut this __17th____ day of August, 2007.

/s/DJS
_____
**DOMINIC J. SQUATRITO**
**UNITED STATES DISTRICT JUDGE**